IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTHEW P. TONSING,

    Petitioner and Plaintiff,

  v.

CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO POLICE COMMISSION and SAN FRANCISCO POLICE DEPARTMENT,

    Respondents and Defendants.
_____/

No. C 09-01446 CW

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Petitioner and Plaintiff Matthew Tonsing brings this action to recover wages for the period of his March, 2003 through January, 2005 suspension for participation in the November, 2002 "Fajitagate" incident. Respondents and Defendants City and County of San Francisco, San Francisco Police Commission and San Francisco Police Department[1] move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing primarily that Plaintiff cannot bring this action without first exhausting the administrative appeals process. Plaintiff opposes the motion. The matter was heard on September 17, 2009. Having considered oral

---

[1] Hereinafter Petitioner and Plaintiff will be referred to as Plaintiff; and Respondents and Defendants will be referred to as Defendants.

argument and all of the papers submitted by the parties, the Court grants Defendants' motion in part.

## BACKGROUND

Plaintiff was employed as a San Francisco police officer from September 18, 2000 to July 23, 2008. On November 20, 2002, Plaintiff was involved in an incident which came to be known as "Fajitagate." In this incident, three off-duty police officers, Plaintiff, Alex Fagan, Jr. and David Lee, were accused of attacking two other men on Union Street in San Francisco early in the morning of November 20, 2002. The officers allegedly demanded a bag of steak fajitas carried by one of the victims, then beat the two men when they refused to turn over the food. On February 28, 2003, the San Francisco grand jury indicted Plaintiff for misdemeanor and felony battery and felony assault for his role in the incident. On March 4, 2003, San Francisco Police Department Chief Prentice E. Sanders suspended Plaintiff without pay pending a hearing before the San Francisco Police Commission (PC).

In April, 2003, Plaintiff waived his right to have a PC trial within ninety days of the date the charges were filed against him. In November, 2004, a jury acquitted Plaintiff of the criminal charges of misdemeanor and felony battery and deadlocked on the charge of felony assault. The district attorney has not retried the case.

On January 6, 2005, Plaintiff was afforded a return to duty hearing by the San Francisco Police Department. On January 10, 2005, San Francisco Police Department Chief Heather Fong allowed Plaintiff to return to work in an administrative position. Plaintiff was not paid while suspended from March 4, 2003 to

January 10, 2005.

On October 8, 2005, Plaintiff injured himself at work and went on disability leave.  For the following year, Plaintiff received full pay and benefits under the police department's disability policy.

On November 30, 2006, Plaintiff wrote a letter to Police Chief Heather Fong demanding reimbursement for his lost pay while suspended from March 4, 2003 to January 10, 2005.  On January 10, 2007, the San Francisco City Attorney responded to Plaintiff that the back-wages issue must be determined by the PC after it addresses the disciplinary charges against Plaintiff.  The disciplinary matter was still pending before the PC.  A hearing before the PC was set for June 4, 2007.  However, that hearing was cancelled.  The parties do not provide a reason for the cancellation.  From July, 2007 to July, 2008, Plaintiff intermittently discussed resolution of his disciplinary case with attorneys for the police department.

On May 23, 2008, the PC notified Plaintiff that it had assigned Plaintiff's disciplinary case to a hearing officer pursuant to a recently enacted rule which allowed police disciplinary cases to be heard by hearing officers instead of the PC.  Under the new rule, Plaintiff had fourteen days to consent to the assignment.  Plaintiff did not consent.  Thus his case was to be included on the agenda for the next available PC meeting, when it would be heard by a single PC member or the entire PC.  Meanwhile, on July 23, 2008, before the next available PC meeting, the Retirement Board granted Plaintiff industrial disability retirement based on the injury he sustained in October, 2005.  At

3

the PC meeting on July 30, 2008, the PC removed Plaintiff's case from the calendar because it believed that Plaintiff's recent retirement stripped it of jurisdiction over the matter. On September 4, 2008, Plaintiff asked the PC to put his case back on the hearing calendar so that his back-pay claim could be adjudicated. On November 4, 2008, the PC notified Plaintiff that it would not hear his case.

On January 21, 2009, Plaintiff filed an administrative tort claim against the City and County of San Francisco, the San Francisco Police Department and the PC. The claim was rejected on March 2, 2009. Plaintiff filed this case on March 6, 2009. Plaintiff brings the following causes of action: (1) Petition for a Writ of Mandate, (2) Violation of the Public Safety Officers Procedural Bill of Rights Act (POBAR), (3) Violation of 42 U.S.C. § 1983, (4) Violation of the Fifth and Fourteenth Amendment of the United States Constitution and Article I, Section 7(a) of the California Constitution, (5) Breach of Contract, (6) Breach of the City Charter and (7) Intentional Infliction of Emotional Distress. On April 2, 2009, Defendants removed this case to this Court. On April 27, 2009, the PC offered to return Plaintiff's case to its docket and set a hearing to begin on July 31, 2009. Plaintiff now does not wish to have his case heard by the PC and instead wants to pursue the instant action.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment on the pleadings is proper when the moving party clearly

4

establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990).

## DISCUSSION

I.  Timeliness

Defendants argue that Plaintiff's first, second and third claims for relief under California Code of Civil Procedure § 1094.5, POBAR and 42 U.S.C. § 1983 respectively are untimely. Plaintiff's claims under § 1094.5 and POBAR are subject to a three-year statute of limitations. Cal. Code Civ. Proc. § 338. The statute of limitations for § 1983 claims borrows from the most analogous state statute of limitations; in California, the personal injury statute of limitations of two years applies. <u>Berg v. California Horse Racing Bd.</u>, 419 F. Supp. 2d 1219, 1225 (E.D. Cal. 2006).

Defendants assert that Plaintiff's statute of limitations began to run either in March, 2003, when Plaintiff was initially suspended without pay, or in January, 2005, when the police department reinstated him from leave without a hearing or back pay. However, since March, 2003, Plaintiff was either defending himself against criminal charges or pursuing his claim administratively. Under California law, the running of the limitations period is tolled during the time consumed by an administrative proceeding, whether that proceeding is a prerequisite to the initiation of a civil suit or a voluntary procedural mechanism. <u>McDonald v. Antelope Valley Community College Dist.</u>, 45 Cal. 4th 88, 101 (2008). Plaintiff was not pursuing his claim diligently, but he

1 was still engaged in the administrative process until November 4,
2 2008, when the PC notified Plaintiff that it would not hear his
3 case.

4 Alternatively, Defendants argue that Plaintiff's claims are
5 time-barred under the equitable doctrine of laches.  Under the
6 doctrine of laches, a petition for a writ of administrative mandate
7 is barred where unreasonable delay is accompanied by prejudice.
8 Conti v. Board of Civil Service Commissioners, 1 Cal. 3d 351, 362
9 (1969).  Defendants argue that Plaintiff had the right to have his
10 suspension and back-pay claim adjudicated by the PC in April, 2003,
11 but that he avoided the adjudication at that time because he did
12 not want the PC to address whether the Fajitagate incident
13 constituted grounds for termination of his employment.  If the PC
14 concluded that Plaintiff should be terminated, then he would not be
15 entitled to back pay.  Defendants assert that he waited until now
16 to pursue his claim because his recent status as a recipient of
17 disability retirement would not be affected by the PC's
18 determination of his discipline.  Defendants' arguments might gain
19 traction if they can be supported with evidence; but on a motion
20 for judgment on the pleadings, the Court will not assume facts
21 outside of the pleadings.  It is not clear from the pleadings that
22 Plaintiff deliberately waited to pursue his back-pay claim until he
23 went on disability retirement.  Further, Defendants have not shown
24 how any delay thus far has prejudiced them.  Therefore, Plaintiff's
25 claims are not barred as a matter of law under the equitable
26 doctrine of laches.
27 II.   Exhaustion
28      Defendants argue that Plaintiff must first go through the PC

6

hearing process before bringing the instant civil action. However, on July 30 and November 4, 2008, the PC notified Plaintiff that it would not consider his claim because it did not have jurisdiction to hear claims of retired police officers. Weeks after the instant lawsuit was filed, the PC changed course, and offered to hear his claim by July 31, 2009. At the hearing on this motion, Defendants reiterated that the PC was still willing to hear Plaintiff's claim.

Defendants cite Redevelopment Agency v. Superior Court, 228 Cal. App. 3d 1487, 1492 (1991), for the proposition that whenever an agency is required to accept, evaluate and resolve a matter entrusted to its discretion, a petitioner must obtain an administrative determination prior to instituting court action. While this is generally true, Redevelopment Agency does not address whether the PC has jurisdiction to hear Plaintiff's claim now that he is retired.

"A civil service commission created by charter has only the special and limited jurisdiction expressly authorized by the charter." Hunter v. Los Angeles County Civil Service Com., 102 Cal. App. 4th 191, 194 (2002). The relevant section of the charter provides,

> If a member of the uniformed ranks of the police and fire departments is suspended by the chief of the respective department pending hearing before the police or fire commission for charges filed against him and subsequently takes a voluntary leave of absence without pay pending his trial before the commission, and, <u>if after such trial he is exonerated of the charges filed against him, the commission</u> shall order payment of salary to such member for the time under suspension and <u>may, in its discretion, order payment of salary to such member for the time on voluntary leave of absence without pay</u>, and the report of such suspension and leave of absence without pay shall thereupon be expunged from the record of service of such member.

San Francisco Charter § A8.344 (emphasis added). Plaintiff relies

7

on <u>Zuniga v. Los Angeles County Civil Service Commission</u>, 137 Cal. App. 4th 1255, 1259-61 (2006), for the proposition that, because he is retired, he is no longer subject to the jurisdiction of the PC. Therefore, Plaintiff refuses to participate in any administrative proceeding offered by the PC. In <u>Zuniga</u>, the plaintiff was charged with grand theft and attempted receipt of stolen property while employed as a Los Angeles County deputy sheriff. <u>Id.</u> at 1257. Zuniga was suspended from his position without pay. <u>Id.</u> In April, 2001, Zuniga requested a hearing before the police commission to challenge the suspension; however, the hearing was stayed pending the outcome of the criminal proceedings. <u>Id.</u>

Zuniga retired from the department on February 12, 2002; and on February 25, 2002, the charges against him were dismissed. <u>Id.</u> A hearing before a hearing officer from the Los Angeles County Civil Service Commission was held in July, 2002. <u>Id.</u> at 1258. The hearing officer recommended to the commission that Zuniga receive full back pay for the suspension period. <u>Id.</u> The Commission, however, sustained the suspension without pay. The trial court denied Zuniga's petition for writ of mandamus and he appealed. The appellate court noted, "There is no provision in the charter granting the Commission authority to hear a wage claim brought by a former civil servant." <u>Id.</u> at 1259. The court continued, "Zuniga requested a hearing on the suspension during his employment, but resigned before the hearing was held." <u>Id.</u> The court held, "The commission does not retain jurisdiction over a former employee in these circumstances." <u>Id.</u> The court lastly rejected Zuniga's argument that his status as an employee when he filed the request for a hearing allowed the Commission to retain jurisdiction over

8

his claim after he retired. Id. at 1261.

Plaintiff's case is similar to Zuniga. The parties have not pointed to any provision of the Charter that grants the PC authority to hear a wage claim brought by a former member of the San Francisco Police Department. Since his disability retirement on July 23, 2008, Plaintiff is no longer a member of the police department subject to the PC's jurisdiction. "In short, the Commission only has authority to address matters involving a member of the civil service, and a person who has retired is no longer a member of the civil service." County of Los Angeles Department of Health Services v. Civil Service Commission of the County of Los Angeles, 2009 WL 4881700, at *6 (Cal. App.); see Zuniga, 137 Cal. App. 4th at 1259-61. Plaintiff's claim now becomes a "wage claim brought by a former civil servant." Zuniga, 137 Cal. App. 4th at 1259 (emphasis added). Therefore, Plaintiff may not exhaust his claim through the administrative process, and the Court cannot require him to do so now.

III. First Cause of Action: Relief Under § 1094.5

Defendants argue that the relief Plaintiff seeks is not proper under § 1094.5. Plaintiff seeks "an Order directing Respondents and Defendants to rescind his unpaid suspension and restore any pay and benefits lost as a result of his suspension." Comp. ¶ 34. Section 1094.5(f) provides:

> The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent.

Rescinding Plaintiff's unpaid suspension and ordering back pay would require the Court to determine whether Plaintiff's conduct warranted a suspension. Nowhere does the statute allow the Court to make findings and determinations in the first instance, before an administrative body has done so. Therefore, Plaintiff is not entitled to this type of relief under § 1094.5.

However, Plaintiff may be entitled under § 1094.5 to a remand for an administrative hearing if he can prove that Defendants' delay in providing him a hearing before the PC effectively amounted to an improper denial of his claim when he took disability retirement. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's first cause of action.

IV. Second Cause of Action: POBAR

Government Code § 3304(b) requires Defendants to provide Plaintiff with an administrative appeal of his suspension. That section specifically states,

> No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal.

Section 3304(b) "does not provide for an automatic administrative appeal, but merely requires that an opportunity for such an appeal be provided. . . . [T]he procedural details for implementing the provisions for an administrative appeal are to be formulated by the local agency." Browning v. Block, 175 Cal. App. 3d 423, 429 (1985). Defendants argue that, because the City Charter and police department's general orders establish an administrative review scheme that provides the right to appeal, as required by § 3304(b),

10

Plaintiff's claim fails.  However, Plaintiff alleges that Defendants denied him the opportunity to utilize those procedures. Plaintiff seems to allege that he sought administrative review and that Defendants delayed hearing his claims during the three and one-half year period between when Plaintiff was reinstated as a police officer and his disability retirement.  Plaintiff's allegation that he was thus deprived of an opportunity to appeal his suspension is sufficient to support a POBAR claim.  Again, however, the remedy would be to order a hearing.

V.   Third Cause of Action: § 1983

Plaintiff's third cause of action is brought under 42 U.S.C. § 1983 for the deprivation of his property rights in employment without due process as a result of the alleged customs, practices and policies of Defendants.  Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees.  Monell v. Dept. of Social Services of the City of N.Y., 436 U.S. 658, 691 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

11

To impose liability on a government entity, a plaintiff must show that "the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" <u>Ulrich v. City & County of San Francisco</u>, 308 F.3d 968, 984 (9th Cir. 2002) (quoting <u>Monell</u>, 436 U.S. at 694)).

Plaintiff may establish that an individual who committed a constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986). In <u>Pembaur</u>, the Supreme Court held that a single decision by a municipal policymaker may be sufficient to trigger § 1983 liability under <u>Monell</u>, even though the decision is not intended to govern future situations. <u>See</u> 475 U.S. at 480-81; <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1347 (9th Cir. 1992). There must, however, be evidence of a conscious, affirmative choice. Municipal liability under § 1983 attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur</u>, 475 U.S. at 483-84 (plurality opinion). Whether a particular official has final policy-making authority is a question of state law. <u>See</u> <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989).

Pursuant to the city charter, the PC is the final policy-making authority regarding discipline of police officers. Defendants argue that Plaintiff has not identified a specific

12

1  custom, practice or policy that allegedly denied him due process
2  before his property rights in employment and employment benefits
3  were taken.  Defendants argue that the only action denying
4  Plaintiff a hearing was a letter written on November 25, 2008 by
5  the Secretary of the PC.  Defendants argue that this letter
6  constitutes a decision by the secretary of the PC and not the PC
7  itself.  However, this letter does not stand in isolation.  On July
8  30, 2008, at a PC meeting, the PC concluded that it had no
9  jurisdiction over Plaintiff's claim.  The PC later confirmed this
10 position in a letter dated August 7, 2008.  On September 4, 2008,
11 Plaintiff again requested that the PC put his case back on the
12 hearing calendar so that his back-pay claim could be adjudicated.
13 However, on November 4, 2008, the PC notified Plaintiff that it
14 would still not hear his case.  The November 25, 2008 letter
15 appears to be merely a confirmation of the PC's second denial.
16 Therefore, the PC's decision not to hear Plaintiff's claim
17 constitutes a decision by an official with policy-making authority
18 for purposes of liability under § 1983.
19      If Plaintiff is alleging, and can prove, that Defendants
20 caused a delay in his PC hearing that amounted to a denial of a
21 hearing when the PC lost jurisdiction due to his disability
22 retirement, he may be able to make out a civil rights claim for
23 deprivation of property without due process.  The remedy, again,
24 would be to order a due process hearing, along with any damages
25 caused by the delay.  Accordingly, the Court denies Defendants'
26 motion to dismiss the § 1983 claim.
27 VI.  Fourth Cause of Action: Constitutional Claims
28      The Court grants Defendants' motion to dismiss Plaintiff's

13

fourth cause of action because, in Plaintiff's opposition brief, he indicated that he will voluntarily withdraw this cause of action.

## VII. Fifth Cause of Action: Breach of Employment Contract

The California "Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the covenant of good faith and fair dealing. This same general principle of law applies to civil service and noncivil service public employees alike." Kim v. Regents of the University of California, 80 Cal. App. 4th 160, 164 (2000). Here, Defendants cannot be held liable for breach of contract because Plaintiff's employment relationship is statutory, not contractual.[2] Therefore, the Court grants Defendants' motion to dismiss the fifth cause of action for breach of the employment contract. The dismissal is with prejudice.

## VIII. Sixth Cause of Action: Breach of the City Charter

Plaintiff cannot bring a cause of action for a breach of the city charter. Plaintiff's reliance on Read v. City of Lynwood, 173, Cal. App. 3d 437 (1985), is misplaced. In Read, a city employee fired under procedures contrary to a city ordinance was permitted to sue for the tort of wrongful discharge. Read did not discuss any right the employee might have to sue for contractual breach of the city charter. Therefore, the Court dismisses with prejudice Plaintiff's sixth cause of action for breach of the city charter.

---

[2] Plaintiff's reliance on Walker v. Northern San Diego Hospital District, 135 Cal. App. 3d 896 (1982), is misplaced.

14

IX. Seventh Cause of Action: Intentional Infliction of Emotional Distress

Plaintiff claims he has suffered mental injuries as a result of his treatment by Defendants. To state such a claim, a plaintiff must plead (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the plaintiff's injuries were actually or proximately caused by the defendant's outrageous conduct. Berkley v. Dowds, 152 Cal. App. 4th 518, 533 (2007). The conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community." Unterberger v. Red Bull N. America, Inc., 162 Cal. App. 4th 414, 423 (2008) (citations omitted). The distress must be so severe that "no reasonable [person] in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970). Plaintiff does not cite any case to support his argument that Defendants' conduct was so extreme as to "exceed all bounds of that usually tolerated in a civilized community." Therefore, Plaintiff fails to state this claim against any Defendant. Plaintiff's IIED claim against Defendants is dismissed with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motion for judgment on the pleadings. The Court will enter judgment on the pleadings on Plaintiff's fourth cause of action for "constitutional claims," fifth cause of action for breach of the employment contract and sixth cause of action for

15

breach of the city charter.  The Court does not grant leave to amend these claims because amendment would be futile.  The Court dismisses with leave to amend Plaintiff's seventh cause of action for intentional infliction of emotional distress.  Plaintiff's first cause of action under § 1094.5, second cause of action under POBAR and third cause of action under § 1983 may proceed.  The Court notes that the remedy for each of these would be to order a due process hearing.  Defendants have offered to provide such a hearing voluntarily.  It would seem most efficient for the parties to participate in such a hearing.  If necessary, they could then litigate whether the hearing was sufficient under Section 1094.5, POBAR and Section 1983 and Plaintiff could seek damages for the delay if he could prove it was caused by Defendants.

   Plaintiff may file and serve an amended complaint within fourteen days from the date of this order, if he can truthfully allege additional acts committed by Defendants that would amount to intentional infliction of emotional distress under California case law.  If Plaintiff fails to file an amended complaint, judgment will be entered against him on the seventh cause of action as well.  Defendants shall respond to any amended complaint fourteen days after it is filed.  Any motion to dismiss shall be taken under submission and decided on the papers.  A further case management conference will be held on April 27, 2010 at 2:00 p.m.

   IT IS SO ORDERED.

Dated: 01/22/10

_____
CLAUDIA WILKEN
United States District Judge